# Exhibit I

```
                                                              Page 1

 1              COMMONWEALTH OF MASSACHUSETTS
 2    SUFFOLK, ss                    SUPERIOR COURT DEPARTMENT
                                     OF THE TRIAL COURT
 3

      ARTHUR J. GALLAGHER & CO.,  §
 4                                §
         Plaintiff,               §       C.A. No.:
 5                                §
      v.                          §       2184CV02828
 6                                §
      ALLIANT INSURANCE SERVICES, §
 7    INC., DOUGLAS BIXBY,        §
      TINA HINCKLEY, RICHARD      §
 8    LEAVITT, JAMIE PESTER,      §
      and HORACE ROGERS,          §
                                  §
 9                                §
         Defendants.              §
10

11    ********************************************************
            REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
12
                         MELISSA HARTFIEL
13
                       7th day of March, 2022
14    ********************************************************
15          REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
16    MELISSA HARTFIEL, Houston, Texas, produced as a
17    witness at the instance of the Plaintiff, and duly
18    sworn, was taken in the above-styled and numbered
19    cause on the 7th day of March, 2022, from 12:28
20    p.m. to 5:01 p.m., before Daniel J. Skur, Notary
21    Public and Certified Shorthand Reporter in and for
22    the State of Texas, reported by stenographic means
23    from Waxahachie, Texas, pursuant to the Federal
24    Rules of Civil Procedure.
25    Job No. CS5112897
```

Page 11

```
 1                P R O C E E D I N G S
 2              VIDEOGRAPHER:  We are now on the record
 3    for the video deposition of Melissa Hartfiel.  The
 4    time is 12:28 p.m., March 7th, 2022, in the matter
 5    of Arthur J. Gallagher & Company versus Alliant
 6    Insurance Services, Incorporated, et al., Civil
 7    Action Number 2184-CV-O2828 being held in the
 8    Commonwealth of Massachusetts.
 9              The court reporter is Dan Skur.  The
10    videographer is Gus Phillips, and both are
11    representatives of Veritext Legal Solutions.
12              Will Counsel please state their
13    appearances for the record, beginning with the
14    plaintiff?
15              MR. RILEY:  Bob Riley for the plaintiff.
16              MS. ALEXAKIS:  Georgia Alexakis for the
17    plaintiff; and with me and Mr. Riley is also Ashley
18    Hurley, a paralegal with our law firm, on behalf of
19    plaintiff.
20              MR. STEPHENS:  Timothy Stephens, Morgan
21    Lewis & Bockius, for the defendants and for the
22    witness.
23              MELISSA HARTFIEL,
24     having been duly cautioned and sworn to tell the
25    truth, the whole truth and nothing but the truth,
```

Page 12

1          testified as follows:
2              (10:00 a.m.)
3              EXAMINATION
4    BY MR. RILEY:
5        Q.   Ms. Hartfiel, again, I'm Bob Riley.
6    Thanks for being here.  Have you ever given sworn
7    testimony before?
8        A.   No, sir.
9        Q.   And what did you do to prepare yourself
10   to give sworn testimony today?
11       A.   I spoke with my attorney, Tim Stephens.
12       Q.   When was that?
13       A.   On Friday.
14       Q.   How long did you speak?
15       A.   Approximately five hours.
16       Q.   Did you review documents with
17   Mr. Stephens?
18       A.   Yes.
19       Q.   What documents did you review?
20       A.   Emails.
21       Q.   What emails?
22       A.   A variety of them.
23       Q.   From whom and to whom?
24       A.   I'm sorry, can you repeat the question?
25       Q.   From whom and to whom?

Page 60

1  Q. On June 23rd, you emailed her and asked
2  for a copy of her current contract or employment
3  agreement, correct?
4  A. Yes. It appears I asked that, correct.
5  Q. And you told her: We will have our
6  legal team review on your behalf.
7  Do you see that?
8  A. Yes.
9  Q. So, now, do you remember getting her
10 Gallagher Employment Agreement?
11 A. I don't believe I remember getting it
12 when we sent that -- when I sent that email.
13 Q. You got it later, didn't you?
14 A. I don't recall exactly the date.
15 Q. Do you deny that you -- you, at some
16 point, saw her Employment Agreement at Gallagher?
17 A. I don't recall when I received her
18 Employment Agreement.
19 Q. When you said: We will have our legal
20 team review on your behalf, what -- what did you
21 mean?
22 A. The typical process when I am speaking
23 with candidates is to request a copy of their
24 current contract, to which I send on to legal for
25 their review.

Page 61

```
1          Q.    Why?
2          A.    Because that's what I've been advised is
3     our process.
4          Q.    Who told you that?
5          A.    I believe that was the process told to
6     me by John Ludwig.
7          Q.    So he told you any time you're
8     recruiting somebody, get their current Employment
9     Agreement, correct?
10         A.    In some cases, yes.
11         Q.    And then send the Employment Agreement
12    to legal, right?
13         A.    Correct.
14         Q.    Well, which of the cases are you
15    supposed to get the Employment Agreement and send
16    it to legal and which are the ones not?  You said
17    it's only "some cases."
18         A.    I would say it's typically for
19    individuals at an account executive level or above.
20         Q.    Did Ms. Hinckley qualify?
21         A.    Yes, based on her background and
22    experience.
23         Q.    Why was sending her Employment Agreement
24    to your legal team, quote, "on your behalf,"
25    meaning her behalf?
```