# Exhibit I

EFiled: Jun 06 2022 04:15PM EDT
Transaction ID 67696537
Case No. 2019-0226-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MOUNTAIN WEST SERIES OF LOCKTON COMPANIES, LLC (formerly known as DENVER SERIES OF LOCKTON COMPANIES, LLC) and LOCKTON PARTNERS, LLC <br><br> Plaintiff, <br><br> v. <br><br> ALLIANT INSURANCE SERVICES, INC. <br><br> Defendant, | C.A. No. 2019-0226-JTL |

## DEFENDANT ALLIANT INSURANCE SERVICES, INC.'S MOTION FOR CONTINUED CONFIDENTIAL TREATMENT

Pursuant to Court of Chancery Rule 5.1(f)(2), and in response to the Notice of Challenge filed on May 20, 2022 by non-party Arthur J. Gallagher & Co. (Trans. ID 67640781) ("Challenge"), defendant Alliant Insurance Services, Inc. ("Alliant") hereby moves for continued confidential treatment of certain information redacted from certain Exhibits to (1) Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction, and (2) Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Reply Brief in Support of Their Motion for a Preliminary Injunction ("PI Exhibits"). For ease of reference, Exhibit A to this

motion includes a chart of the challenged redactions for which Alliant seeks continued confidential treatment ("Alliant Exhibit A").

Alliant respectfully submits that good cause exists for continuing the confidential treatment of the limited Redacted Information, as defined and described below.

## BACKGROUND

1.     On March 22, 2019, Plaintiffs Mountain West Series of Lockton Companies, LLC and Lockton Partners, LLC (collectively, "Lockton") commenced the above-captioned action by filing a Verified Complaint (Trans. ID 63093743). On May 31, 2019, Lockton filed a Motion for Preliminary Injunction (Trans. ID 63312364).

2.     The parties fully briefed Lockton's Motion for Preliminary Injunction, which included the PI Exhibits, in accordance with Court of Chancery Rule 5.1. The parties reached a settlement and the action was dismissed with prejudice on January 27, 2020 (Trans. ID 64659097).

3.     On March 7, 2022, non-party Arthur J. Gallagher & Co. ("Gallagher" or "Challenger"), a competitor of Alliant in the insurance brokerage industry, filed a Notice of Challenge to Confidential Treatment (Trans. ID 67362639) challenging

a number of exhibits to the preliminary injunction briefs, which were previously filed under seal and subject to the requirements of Rule 5.1(f)(1).[1]

4.     In response to Gallagher's first challenge and in accordance with Rule 5.1(f)(1), in April and May 2022, Alliant and Lockton prepared and filed redacted public versions of dozens of the previously sealed exhibits to the preliminary injunction briefing (Trans. ID 67491524, 67490885, 67491737, 67491838, 67492467, 67493424, 67494954, 67495368, 67495637, 67510433, 67598149).

5.     On May 20, 2022, Gallagher filed another Notice of Challenge to Confidential Treatment challenging a number of the recently-filed redacted PI Exhibits.  Trans. ID 67640781.

6.     Through this Motion, Alliant moves for continued confidential treatment of certain limited information that was redacted from the public versions of the PI Exhibits in April and May of 2022 (the "Redacted Information").  The Redacted Information is narrow and includes either (1) sensitive business and financial information of Alliant and its employees, or (2) sensitive personal information such as cell phone numbers and email addresses of Alliant employees and their spouses.  Good cause exists for continued confidential treatment of the

---

[1] That notice also challenged redactions in the preliminary injunction briefs that reference or cite to the PI Exhibits and challenged redacted portions of the Affidavits of Peter Arkley and Charles M. McDaniel in Support of the Opposition Brief.  Certain of those challenged redactions are subject to a separate motion for continued confidential treatment filed by Alliant.  (Trans. ID 67451189).

3

Redacted Information because the public disclosure of such information would cause Alliant undue harm, including significant competitive harm, and would cause the individuals involved in the underlying dispute undue harm and unnecessarily invade their privacy. Maintaining the confidentiality of this information will not prevent the public from understanding the nature of Alliant's and Lockton's dispute previously before this Court.

7. Gallagher's second challenge, like its first challenge, purportedly brought in the name of public access, is simply a transparent attempt to harass Alliant, a business competitor and litigation opponent. Gallagher is using this challenge, as it did its first challenge, as a means to obtain sensitive information to which it is not entitled for the purpose of harming Alliant and its employees both in the competitive marketplace (with respect to customers and employees) and in other litigation matters. Gallagher's motive is apparent from its opposition to Alliant's previous motion for continued confidential treatment, as it devoted several pages of its opposition attempting to smear Alliant by mischaracterizing its business practices and harping on lawsuits filed against Alliant over the past dozen years— all by Alliant's competitors—while conveniently ignoring Gallagher's own substantial litigation history. Notably, Gallagher has gone out of its way to challenge little, if any, of the information redacted by Lockton in this case, as Lockton is not Gallagher's adversary. Indeed, Gallagher appears to be partnering

4

with Lockton on these challenges as evidenced by Gallagher's agreement to withdraw its challenges to many of Lockton's redactions. Instead, Gallagher focused its challenge almost exclusively on information redacted by Alliant.[2] Gallagher's disingenuousness is summed up in one of its own descriptions of the redactions it challenged in Exhibit 51: "All redactions proposed by Alliant. Challenge does not include redactions proposed by Lockton." *See* Gallagher Ex. A at 4 (Ex. 51).

## ARGUMENT

### I.   THE RELEVANT STANDARD

8.      Under Court of Chancery Rule 5.1(f)(2), if a challenge is made to the confidential treatment of a confidential filing, including a public version of a court document with redactions to preserve confidentiality, any person may seek continued confidential treatment by "filing a motion within five days after the filing of a challenger's notice." Ct. Ch. R. 5.1(f)(2).[3]

---

[2] By way of example, Gallagher challenges Alliant's redaction of the specific dollar amounts of employees' salaries while at Alliant but does not challenge the redaction in the same exhibits of those same employees' salaries while they were at Lockton. *See* Alliant Ex. A (citing Ex. 34 and 128).

[3] Following the filing of the Notice, the parties agreed that the time period for Lockton and Alliant to respond to the Notice, as provided in Court of Chancery Rule 5.1(f), would be extended to June 6, 2022, subject to Court approval, and this Court granted the extension. (Trans. ID 67661535).

9.     The right of public access to court records is not absolute.  *See In re John E. du Pont*, 1997 WL 383008, at *2-3 (Del. Ch. June 20, 1997) ("Although there is a general presumption of access to civil proceedings and records, courts have the discretion and power to close hearings and keep records under seal when appropriate.").  Issues regarding the right of access rest within the sound discretion of the Court.  *Id.*; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978) (ruling that the decision to allow access to private records rests in the sound discretion of the trial court in light of the relevant facts and circumstances of the particular case).

10.     Thus, the Rules permit parties to protect confidential information from public view "where good cause exists for Confidential Treatment."  Ct. Ch. R. 5.1(b)(1).  Good cause exists where "the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, nonpublic information would cause."  Ct. Ch. R. 5.1(b)(2).  "[S]ensitive proprietary information" and "sensitive financial, business, or personal information" constitute information eligible for confidential treatment under Rule 5.1.  *Id.*; *see also Kronenberg v. Katz*, 872 A.2d 568, 608 (Del. Ch. 2004) ("Because it is necessary for the judiciary to protect the legitimate privacy and commercial interests of litigating parties, it is understood that reasonable limitations can be placed on public access to judicial records.").

## II. "GOOD CAUSE" EXISTS FOR CONTINUED CONFIDENTIAL TREATMENT OF THE REDACTED INFORMATION

11.    Good cause exists for the continued confidential treatment of the Redacted Information.  The limited redactions for which Alliant seeks continued confidential treatment fall into two main buckets: (1) sensitive business and financial information, or (2) sensitive personal information such as personal emails and cell phone numbers.  The public disclosure of such sensitive business and financial information could be improperly used by Alliant's competitors, including Gallagher, to harm Alliant, and the disclosure of this challenged business, financial, and personal information is not necessary for the public's understanding of the dispute between Alliant and Lockton that was adjudicated before the Court.  The public disclosure of sensitive personal information, including contact information, invades the privacy of individual non-parties.

### A.    Sensitive Business and Financial Information

12.    The majority of the redactions challenged by Gallagher that Alliant seeks to maintain as confidential involve the specific compensation information of an Alliant executive and several former Lockton producers and employees who joined Alliant.  *See* Alliant Exhibit A (noting redactions in Exhibits 1-2, 4-5, 10, 32-35, 42, 52, 61, 66, 76, 78-79, 85, 87-90, 101-02, 108-10, 112-18, 120, 124-25, 128-30, 138, 145, 156, 162, 164, 223-25, 309, 311).  For example, Gallagher seeks to make public the terms and components of these employees' compensation,

including the specific dollar amounts of their annual salaries, signing bonuses, and annual bonuses, the formulas used to calculate certain bonuses based on Alliant's financial metrics, the timing and structure of bonus payments, and the price, number of shares, vesting schedule, and other terms of equity awards to these employees. Gallagher also seeks to reveal the details of the compensation Alliant offered to Andrea Steinberg, a Lockton employee who ultimately decided not to leave Lockton. *See* Alliant Exhibit A (Ex. 12).

13. Good cause exists for maintaining the confidential treatment of Alliant's redaction of information concerning the financial terms of Alliant's producer and employee salaries and contracts. Public disclosure of this information would competitively harm Alliant, as Alliant's competitors and prospective candidates for employment alike would gain an informational advantage concerning Alliant's producer and employee compensation. *See Cantor Fitzgerald, Inc. v. Cantor*, 2001 WL 422633, at *2 (Del. Ch. Apr. 17, 2001) (finding good cause to seal nonpublic financial information because, "[i]n general, it is quite apparent that . . . non-public financial information [is] deserving of protection"); *Hewlett v. Hewlett-Packard Co.*, 2002 WL 32151538, at *1 (Del. Ch. Apr. 16, 2002) (ordering that "non-public information or matters related to: financial or business plans or projections, acquisition offers or expressions of interest, proposed strategic transactions or other business combinations, trade secrets, **compensation plans**,

proprietary technical information and specifications, business and marketing information, plans, and strategies," among other things, shall be deemed "Confidential Information") (emphasis added).

14.    In addition to being confidential compensation information, the specifics of the equity awards received by these Alliant employees, including the price per share of Alliant, a privately-held company, should be kept confidential. *See In re Trust for Gore*, 2011 WL 13175994, at *2 (Del. Ch. Dec. 22, 2010) ("Nonpublic estimates of the value of a privately held company are generally entitled to confidential treatment."); *Stroud v. Grace*, 606 A.2d 75, 89 (Del. 1992) (recognizing "the essential nature of keeping financial information confidential in privately-held corporations....").

15.    Armed with this compensation information, Alliant's competitors would gain a competitive market advantage over Alliant in pre-emptively matching or exceeding financial terms in hiring certain employees and using this information to solicit current Alliant employees.  Such information squarely fits within the protections of Rule 5.1.  *See Sullivan v. Hammer*, 1990 WL 60767, at *1 (Del. Ch. May 4, 1990) (legitimate interest in protecting commercial information that would, if made public, benefit competitors).

16.    Good cause also exists for maintaining the confidential treatment of information relating to Alliant's positions on the negotiation of these employees'

compensation and other provisions of their terms of employment, and the implications on Alliant's future contract negotiations if Alliant accommodated certain requests. *See, e.g,* Alliant Exhibit A (citing Ex. 4, 5, 10, 32, 33, 34, 42, 76, 78, 79, 85, 88, 108-110, 112, 113, 164). The Court permits confidential treatment of this sort of information because it "implicate[s] the private give and take among parties." *Cantor Fitzgerald,* 2001 WL 422633, at *3. The public disclosure of information detailing negotiations of these points would competitively harm Alliant in future employee contract and salary negotiations. Prospective employees, as well as competitors like Gallagher, would have knowledge of Alliant's prior negotiating positions and could use that information to gain an advantage over Alliant in recruiting.

17. In addition to compensation information and negotiations, Gallagher also seeks to reveal documents and emails that were only produced in this litigation after the Court found that the attorney-client privilege had been waived. *See, e.g,* Alliant Exhibit A (citing Ex. 3, 6, 51, 164, 299). These documents and emails contain analysis by Alliant's outside counsel on certain employees' employment agreements and potential litigation strategy, and discussions between Alliant and its outside counsel on these topics and the negotiation of certain employees' employment agreements. While these documents may have lost their privileged status and protection, they should still be treated as confidential under Rule 5.1. The

privileged materials produced as a result of the waiver order nevertheless deserve confidential treatment due to the inherent importance of the confidentiality of attorney-client communications, and these materials should not be revealed openly to the public despite no longer being privileged. *See Salberg v. Genworth Fin. Inc.*, 2017 WL 3499807, at \*3 (Del. Ch. July 27, 2017) ("It is well settled in our law that the attorney-client privilege is 'critical to encourage full and frank communications between attorneys and their clients and thereby promote broader interests in the observance of law and administration of justice.'"). Although the attorney-client privilege is waived, the redactions still are proper because they cover other sensitive business information, including the enforceability of the restrictive covenants and litigation strategy, which falls under the broader umbrella of business plans and strategies or other commercially sensitive proprietary information protected by Rule 5.1. *Hewlett*, 2002 WL 32151538, at \*1. Alliant sought to maintain the confidentiality of these documents at all times in this litigation – they were filed under seal at the time of PI briefing and are now the subject of a timely motion for continued confidential treatment. *Compare Ashton v. Fetch, Inc.*, C.A. No. 2018-0743-KSJM, Tr. at 36 (Del. Ch. June 26, 2019) (TRANSCRIPT) (denying confidential treatment of documents produced after a waiver of privilege because the motion to seal was retroactive after the documents had already been publicly filed).

11

**B.  Sensitive Personal Information**

18.  Finally, Alliant seeks to maintain the confidential treatment of certain employees' sensitive personal information.  Gallagher's Challenge seeks to disclose on a public docket the cell phone numbers and personal email addresses of several Alliant employees and an Alliant employee's spouse.  *See* Alliant Exhibit A (Exhibits 145, 309-12, 315-18).  Gallagher also seeks to reveal the reason behind an Alliant employee being out on leave.  *Id.* (Ex. 32).  These categories of information should be maintained as confidential as they qualify as sensitive personal information under Rule 5.1.  There is no justification for Gallagher to seek this information.  Revealing this information will only serve to harass Alliant employees and their families, and it in no way helps the public understand the basis of the litigation between Lockton and Alliant previously before this Court.

**C.  Disclosure of This Information is Not Necessary for the Public to Understand the Nature of the Dispute Between Alliant and Lockton Previously Before the Court**

19.  Continued confidential treatment of the Redacted Information will "not greatly disadvantage the public's ability to understand the nature of the dispute [previously] before this Court."  *Al Jazeera Am., LLC v. AT & T Servs., Inc.,* 2013 WL 5614284, at *7 (Del. Ch. Oct. 14, 2013).  The public information provided in the voluminous filings in this case adequately characterizes the nature of the parties' dispute.  The redactions for which Alliant seeks continued confidential treatment

12

are narrow in scope and limited in number, and therefore, the public will have access to all but a fraction of the information contained in the preliminary injunction briefs and supporting exhibits. *In re Oxbow Carbon LLC Unitholder Litig.*, 2016 WL 7323443, at *4 (Del. Ch. Dec. 15, 2016) (ORDER) ("The 'discrete' nature of the information is such that its redaction would not hinder the public's ability to understand[] the nature of the claims that the parties assert."). Thus, "a balancing of the public interest against the harm that public disclosure might entail" counsels in favor of maintaining the confidentiality of the Redacted Information. *Reid v. Siniscalchi*, 2014 WL 6486589, at *1 (Del. Ch. Nov. 20, 2014).

20.     The public's understanding of the nature of the disputed issues between Alliant and Lockton would not be enhanced if they knew the precise dollar amounts of Alliant employees' salaries, bonuses, equity awards, and compensation packages. Nor will the public better understand the dispute if they were informed of Alliant employees' personal email addresses and cell phone numbers. This information was and is irrelevant to the disputed issues and the Court's findings in the case, and, therefore, should remain confidential. *See Quantum Tech. Partners IV, L.P. v. Ploom, Inc.*, 2014 WL 2156622, at *6 (Del. Ch. May 14, 2014, rev. May 28, 2014) (movant's interest in maintaining confidentiality "outweigh[ed] the public's interest in viewing the information" where the information "largely [was] irrelevant" to the

Court's findings "and therefore would not illuminate the public's understanding of this dispute").

## **CONCLUSION**

For the foregoing reasons, Alliant respectfully requests that the Court enter the enclosed order permitting the continued Confidential Treatment of the Redacted Information.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Timothy J. Stephens
MORGAN, LEWIS & BOCKIUS
LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

Jody C. Barillare (No. 5107)
MORGAN, LEWIS & BOCKIUS
LLP
1201 N. Market Street
Suite 2201
Wilmington, DE 19801
(302) 574-3000

Dated:  June 6, 2022

By: */s/ Jacqueline A. Rogers*
    Peter J. Walsh Jr. (No.2437)
    Jacqueline A. Rogers (No. 5793)
    Justin T. Hymes (No. 6671)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE  19899
    (302) 984-6000

*Attorneys for Defendant Alliant Insurance Services, Inc*

WORDS: 2,823

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2022, a copy of the foregoing *Defendant Alliant Insurance Services, Inc.'s Motion for Continued Confidential Treatment* was served via *File & ServeXpress* upon the following attorneys of record:

Kenneth J. Nachbar, Esquire
Ryan D. Stottmann, Esquire
Thomas P. Will, Esquire
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200

Corinne Elise Amato, Esquire
PRICKETT, JONES & ELLIOTT,
P.A.
1310 King Street
Wilmington, Delaware 19801
(302) 888-6500

*/s/ Jacqueline A. Rogers*

Jacqueline A. Rogers (No. 5793)

EFiled: Jun 06 2022 04:15PM EDT
Transaction ID 67696537
Case No. 2019-0226-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MOUNTAIN WEST SERIES OF            )
LOCKTON COMPANIES, LLC             )
(formerly known as DENVER SERIES   )
OF LOCKTON COMPANIES, LLC), and    )
LOCKTON PARTNERS, LLC,             )
                                   )   C.A. No. 2019-0226-JTL
                                   )
           Plaintiffs,    )
                                   )
    v.                          )
                                   )
ALLIANT INSURANCE SERVICES, INC.,  )
                                   )
           Defendant.      )

# EXHIBIT A TO ALLIANT'S MOTION FOR CONTINUED CONFIDENTIAL TREATMENT

| Exhibit Challenged | Redactions Subject to Motion for Continued Confidential Treatment – Reason |
|---|---|
| Ex. 1 | All redactions[1] – Compensation information (Specific salary, bonus, and stock options offered to Robert Kinder, Nick Hansen, and Derek Cady) |
| Ex. 2 | All Redactions – Compensation information (Specific salary, bonus, and stock options Alliant offered to Charles McDaniel) |
| Ex. 3 | All redactions[2] – Non-public legal analysis (Memorandum from Alliant's outside counsel re: analysis of Charles McDaniel's Lockton employment agreements under Missouri and Colorado law) |
| Ex. 4 | All Redactions – Compensation information (Specific salary, bonus, |

[1] In its Challenge, Gallagher used the phrase "All redactions" to describe the redactions it challenged for certain exhibits. Where appropriate, Alliant either uses that same phrase or specifies certain redactions for each exhibit.

[2] In the public version of this exhibit, as well as Exhibits 6 and 51 below, Alliant did not redact portions of these memos that were publicly disclosed in Court or elsewhere on the docket.

1

| | |
|---|---|
| | and stock options Alliant offered to McDaniel and negotiation of those compensation terms) |
| **Ex. 5** | All Redactions – Compensation information (Specific salary, bonus, and stock options Alliant offered to McDaniel and negotiation of those compensation terms) |
| **Ex. 6** | All redactions – Non-public legal analysis (Memorandum from Alliant's outside counsel re: analysis of Derek Cady's Lockton employment agreements under Missouri and Colorado law) |
| **Ex. 10** | All redactions – Compensation information (Negotiation of terms and provisions of Robert Kinder's employment agreement with Alliant) |
| **Ex. 12** | 56:11-13; 176:3-7, 10-12 – Compensation information (Alliant's specific salary, bonus, and stock options offer to Steinberg, an employee who stayed with Lockton) |
| **Ex. 32** | 60:14-15, 25; 61:2-3; 64:23-24; 65:1-2; 70:20-25; 72:1, 3-4, 9, 23; 73:4, 11-12; 74:5 – Compensation information (formula for calculating Peter Arkley's bonus)<br><br>68:14-15, 24; 69:4, 15, 17; ; 70:1-2, 4-5, 11-13, 19-20, 22-25; 71:1-2, 7-10, 12; 77:2-5, 12-14; 78:12-15, 17-18, 23-25 – Compensation information (dollar amounts of Arkely's bonuses and salary, number of shares)<br><br>86:1; 88:1, 4 – Personal leave information<br><br>188:4-7, 12, 16-17, 20-21; 189:12-15; 190:1-3; 191:7-8; 196:3-4, 8-9, 12, 15, 22-25; 197:13; 197:13; 198:10, 12-17, 19-21, 24-25; 199:1, 11-14; 200:7, 9-11; 202:4-7, 19; 203:6; 204:2-3, 9-10; 205:2-5, 8, 12-22, 24-25; 206:6-16; 208:1-2, 7; 209:24-210:2; 219:13-19 – Compensation information (specific terms/components of McDaniel's compensation and bonus, including formula for calculating bonus, contractual terms negotiated for)<br><br>240:16-23; 244:7-8; 245:17-20; 246:21-23 – Compensation information (Negotiation of specific terms in McDaniel's employment contract) |

2

| | |
|---|---|
| | 311:25; 312:5-7, 17-18, 23-24; 314:9-10 – Compensation information (specific bonus payments for Cady) |
| | 373:6-8; 380:1-3, 11-13, 15-16 – Compensation information (compensation terms Alliant offered to Andrea Steinberg and other named Lockton employees) |
| **Ex. 33** | 78:9; 79:2, 5, 18-19; 80:10, 23-24; 184:3 – Compensation information (Negotiation of specific contractual terms of Anuj Jain's employment agreement) |
| | 173:12 – Compensation information (specific price of Alliant shares included in Jain's equity award compensation) |
| | 189:8, 15, 17, 25; 190:2, 4, 8-10, 13, 16, 18-19, 22; 191:1-6, 9-11, 19, 22-23, 192:14, 16-17 – Compensation information (details of Jain's yearly salary, signing bonus, and stock options negotiated with Alliant) |
| **Ex. 34** | 56:18,20-21; 57:10; 59:16, 19; 61:22-23 – Compensation information (specific dollar amounts for salary, signing bonus, and stock option price Alliant offered Sarah Matthews) [*Gallagher doesn't challenge Matthews' compensation while she was at Lockton at 62:2, 8, 10*] |
| | 210:24-25; 211:7, 10-11; 212:2-3, 18-19, 21-24; 220:15-16, 18-19; 221:4-6, 21-25; 222:13-20; 224:6-12; 226:13-15, 22-23; 227:5-7, 19, 22; 228:11, 14-22; 229:3-4; 230:8-12, 22-25; 231:1, 4-7, 17-18; 233:22-25; 353:11, 20 – Compensation information (negotiation of signing bonus Alliant offered Matthews and provisions of employment agreement) |
| **Ex. 35** | 44:12 – Compensation information (exact dollar amount of salary increase to Paige Widrig, an Alliant assistant account manager) |
| **Ex. 42** | Redactions on pages Bates labeled Alliant_00086814-00086816 – Compensation information (Negotiation of specific compensation terms (including dollar amounts and structure) and provisions of employment agreement for McDaniel) |
| **Ex. 51** | "All redactions proposed by Alliant. Challenge does not include |

| | |
|---|---|
| | redactions proposed by Lockton" – Non-public legal analysis (Memorandum from Alliant's outside counsel re: enforceability of Nick Hansen's Lockton agreements under Illinois and Colorado law as well as potential litigation strategy) |
| **Ex. 52** | All redactions – Compensation information (Exhibit to McDaniel's employment agreement listing his compensation at Alliant (salary, signing bonus, annual bonus, and formula for calculation of bonuses), including specific dollar amounts, as set forth in his employment agreement) |
| **Ex. 61** | All redactions – Compensation information (Specific signing bonus amounts for Hansen and Cady, price of equity units awards) |
| **Ex. 66** | All redactions – Compensation information (Specific salary, signing bonus, annual bonus, price and structure of equity units award to Sarah Matthews) |
| **Ex. 76** | 206:14-15, 17; 296:1, 3, 6, 9, 12, 14, 16-17, 22-25; 297:1-3, 17; 297:1-3, 17; 299:1-2, 4, 8, 12-13, 21, 24-25; and 300:1-3 – Compensation information (negotiation of McDaniel's signing bonus, annual bonus, price and structure of equity compensation, and salary) |
| **Ex. 78** | All redactions – Compensation information (Negotiation of specific salary, signing bonus, annual bonus, price and structure of equity units award to McDaniel) |
| **Ex. 79** | All redactions – Compensation information (Negotiation of specific salary, signing bonus, annual bonus, price and structure of equity units award to McDaniel) |
| **Ex. 85** | All redactions – Compensation information (Negotiation of specific price and structure of equity units award to Cady) |
| **Ex. 87** | All redactions – Compensation information (Negotiation of specific signing bonus to Cady) |
| **Ex. 88** | All redactions – Compensation information (Negotiation of specific amounts of salary, signing bonus, annual bonus, price and structure of |

| | equity awards, and severance to Cady) |
|---|---|
| **Ex. 89** | 282:5-6, 11-12, 20-21; 283:5, 23; 284:2, 5-7, 13, 18, 25; 285:1; 287:22; and 288:13 – Compensation information (Robert Kinder's salary amount, salary structure, signing bonus, total amount of compensation) |
| **Ex. 90** | All redactions – Compensation information (Alliant's specific salary, bonus, and stock options offers to Robert Kinder, Nick Hansen, and Derek Cady) |
| **Ex. 101** | All redactions – Compensation information (Specific signing bonus amounts for Hansen and Cady, price of equity units awards) |
| **Ex. 102** | All redactions – Compensation information (Specific signing bonus amounts for Hansen and Cady, price of equity units awards) |
| **Ex. 108** | "Redactions at the end of the sentence starting 'Note, many of our responses are based on the fact that . . .'" – Compensation information (Negotiation of provisions of employment agreement and compensation terms for Kinder) |
| **Ex. 109** | All redactions – Compensation information (Negotiation of provisions of McDaniel's employment agreement and terms of signing bonus and salary) |
| **Ex. 110** | All redactions – Compensation information (Negotiation of specific amounts of salary, signing bonus, annual bonus, and price and structure of equity awards to Cady) |
| **Ex. 112** | All redactions – Compensation information (Negotiation of specific amounts of salary, signing bonus, annual bonuses, additional bonus, and price and structure of equity awards to McDaniel, negotiation of provisions of employment terms and conditions) |
| **Ex. 113** | All redactions – Compensation information (Negotiation of specific amounts and structure of salary, signing bonuses, annual bonuses, and price and structure of equity awards to McDaniel) |
| **Ex. 114** | All redactions – Compensation information (Calculation of |

| | |
|---|---|
| | McDaniel's earn out and bonus under the proposed formula, amount and structure of signing bonus and annual bonuses) |
| **Ex. 115** | All redactions – Compensation information (Specific amounts and structure of salary, signing bonus, annual bonuses, and price and structure of equity awards to Kinder) |
| **Ex. 116** | All redactions – Compensation information (Exhibit to Kinder's employment agreement setting out the specific terms and dollar amounts of his compensation at Alliant (salary, signing bonuses, annual bonuses and formula for calculation of bonuses, price and structure of equity award) |
| **Ex. 117** | All redactions – Compensation information (Exhibit to Cady's employment agreement setting out the specific terms and dollar amounts of his Alliant compensation (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |
| **Ex. 118** | All redactions – Compensation information (Exhibit to Hansen's employment agreement setting out the specific terms and dollar amounts of his compensation at Alliant (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |
| **Ex. 120** | All redactions – Compensation information (Term sheet for Sarah Matthews setting out specific amounts of salary, signing bonuses, annual bonuses, and formula for calculating bonuses, and price, structure, and vesting schedule of equity award) |
| **Ex. 124** | All redactions – Compensation information (Specific amounts of Sarah Matthews' salary, signing bonuses, annual bonuses, and formula for calculating bonuses, and price, structure, and vesting schedule of equity award)<br><br>All redactions – Compensation information (Exhibit to Matthews's employment agreement setting out the specific terms and dollar amounts of her compensation at Alliant (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |

6

| | |
|---|---|
| **Ex. 125** | All redactions – Compensation information (Hourly salary and signing bonus for Alliant assistant account manager Paige Widrig) |
| **Ex. 128** | 71:09 – Compensation information (Specific dollar amount of Leah Erickson's salary at Alliant) [*Gallagher not challenging the confidentiality of her salary at Lockton at 71:07*] |
| **Ex. 129** | All redactions – Compensation information (Specific number of equity shares offered to Leah Erickson) |
| **Ex. 130** | All redactions – Compensation information (Specific dollar amount of salary increase for Paige Widrig) |
| **Ex. 138** | All redactions – Compensation information (Specific amounts of Anuj Jain's salary, signing bonuses, annual bonuses, and formula for calculating bonuses, severance, and price, structure, and vesting schedule of equity award) |
| **Ex. 145** | 12:9; 72:4 – Personal information (Personal email address of Daniel Reitman, project manager who left Lockton for Alliant) |
| **Ex. 156** | All redactions – Compensation information (Specific amounts of Richard Schwartzenberger's salary, signing bonuses, annual bonuses, and formula for calculating bonuses, and price, structure, and vesting schedule of equity award)

All redactions – Compensation information (Exhibit to Richard Schwartzenberger's employment agreement setting out the specific terms and dollar amounts of his compensation at Alliant (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |
| **Ex. 162** | 157:16, 18, 20; 159:5; 191:16; 192:3; 214:7, 22, 25; 215:13; 216:14; 217:11 – Compensation information (Specific salary, signing bonus, equity award offered to Gregory Winter) |
| **Ex. 164** | 160:21-22 – Compensation information (negotiation of provision of |

| | |
|---|---|
| | McDaniel's employment agreement) |
| | 181:24-25; 182:1-6, 12-16, 21-25; 184:1-2, 6-8, 13-16, 20-23; 187:7-12, 23-25; 188:1-6 – Non-public legal advice (Alliant's outside counsel's advice and memorandum re: McDaniel's Lockton agreement under Missouri and Colorado law) |
| | 193:23-24; 194:11, 17; 196:14-23; 197:15-18, 19-21, 25; 198:1-5, 9-10; 199:3-9, 20-25; 200:9, 16; 201:1-4, 6-7, 9, 13, 19-25; 202:1-2, 11, 18, 20-21; 203:5, 12-14, 24; 204:9-13, 19-23, 25; 205:1-2, 11, 18, 20-21, 25; 206:1-3; 207:8-9, 12-13, 15-17; 208:7-9; 209:19; 210:18, 20, 22, 25; 212:4-5, 9-10, 12-13, 16-18, 22; 226:10-16; 230:11-23; 233:8-9, 14, 16-17, 22-23; 234:7-8; 236:7-9, 16, 23-24; 237:18-19; 238:2-4; 240:5-6, 11, 23; 241:12, 18-19 – Compensation information (Specific terms and formula and payout of McDaniel's earn-out bonus, salary, bonus amounts, negotiation of McDaniel's compensation terms and provisions of employment agreement) |
| **Ex. 223** | All redactions – Compensation information (Exhibit to Raymond Paolini's employment agreement setting out the specific terms and dollar amounts of his compensation at Alliant (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |
| **Ex. 224** | All redactions – Compensation information (Exhibit to Richard Schwartzenberger's employment agreement setting out the specific terms and dollar amounts of his compensation at Alliant (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |
| **Ex. 225** | All redactions – Compensation information (Exhibit to Gregory Winter's employment agreement setting out the specific terms and dollar amounts of his compensation at Alliant (salary, signing bonuses, annual bonuses, and formula for calculating bonuses, price and structure of equity award) |
| **Ex. 309** | Personal information – Cell phone numbers of Jain and his spouse |
| | Compensation information – Specific amounts of Jain's salary and bonus offered by Alliant |

| | |
|---|---|
| **Ex. 310** | Personal information – Cell phone numbers of Jain and his spouse |
| **Ex. 311** | Personal information – Cell phone numbers of Jain and his spouse<br><br>Compensation information – Specific amounts of Jain's salary and bonus offered by Alliant |
| **Ex. 312** | Personal information – Cell phone numbers of Jain and his spouse |
| **Ex. 315** | Personal information – Cell phone numbers of McDaniel and Arkley |
| **Ex. 316** | Personal information – Cell phone numbers of McDaniel and Arkley |
| **Ex. 317** | Personal information – Cell phone numbers of McDaniel and Arkley |
| **Ex. 318** | Personal information – Cell phone numbers |

**EFiled: Jun 06 2022 04:15PM EDT**
**Transaction ID 67696537**
**Case No. 2019-0226-JTL**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| MOUNTAIN WEST SERIES OF LOCKTON COMPANIES, LLC (formerly known as DENVER SERIES OF LOCKTON COMPANIES, LLC) and LOCKTON PARTNERS, LLC<br><br>Plaintiff,<br><br>v.<br><br>ALLIANT INSURANCE SERVICES, INC.<br><br>Defendant, | C.A. No. 2019-0226-JTL |

### [PROPOSED] ORDER GRANTING DEFENDANT ALLIANT INSURANCE SERVICES, INC.'S MOTION FOR CONTINUED CONFIDENTIAL TREATMENT

WHEREAS, on May 20, 2022, non-party Arthur J. Gallagher & Co. ("Challenger") filed a Notice of Challenge to Confidential Treatment (the "Notice") (Trans. ID 67640781) challenging the confidential treatment of certain information redacted from public versions of Exhibits to (1) Transmittal Affidavit and Corrected Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Opening Brief in Support of Their Motion for a Preliminary Injunction, and (2) Transmittal Affidavit of Jarrett W. Horowitz in Support of Plaintiffs' Reply Brief in Support of Their Motion for a Preliminary Injunction (the "PI Exhibits"); and

WHEREAS, on June 6, 2022, Defendant Alliant Insurance Services, Inc. ("Alliant") filed a Motion for Continued Confidential Treatment (the "Motion"), seeking continued confidential treatment of certain redactions in the PI Exhibits.

Upon consideration of the Motion, it is hereby ordered, this __ day of _____ 2022 that:

1. The Motion is GRANTED;

2. Subject to Court of Chancery Rule 5.1(f)(2), the redactions contained in the PI Exhibits for which Alliant has sought continued confidential treatment in its Motion (as listed in Exhibit A thereto) shall continue to receive confidential treatment.

_____
Vice Chancellor J. Travis Laster

2