UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO.,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANT INSURANCE SERVICES, INC.<br><br>Defendant. | Case No.: 1:22-cv-03931<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Martha M. Pacold |

**PLAINTIFF ARTHUR J. GALLAGHER & CO.'S RESPONSE IN OPPOSITION TO DEBRA L. FISCHER'S MOTION FOR LEAVE TO APPEAR *PRO HAC VICE***

Plaintiff Arthur J. Gallagher & Co. ("Gallagher") respectfully submits this Response in Opposition to Debra L. Fischer's Motion for Leave to Appear *Pro Hac Vice* (Dkt. 22).

**INTRODUCTION**

The undersigned has never before opposed a *pro hac vice* application, but the facts of this case are unique. As set forth in Gallagher's Complaint (Dkt. 1), Alliant Insurance Services, Inc. ("Alliant") has been involved in litigation for years against many of its competitors who claim that Alliant engaged in a years-long pattern of schemes to unlawfully poach employees and steal confidential information and clients from competitors, including Gallagher. The recently unsealed and unredacted documents from the *Lockton* litigation show that Alliant's lead outside counsel (and subject of this motion), Debra Fischer, has directed Alliant to induce contractual breaches. More importantly, for purposes of this motion, Ms. Fischer instructed Alliant to avoid creating documentary evidence of Alliant's tortious conduct. And on at least one occasion, Ms. Fischer instructed an Alliant executive to direct the destruction of evidence in anticipation of litigation. This extraordinary conduct makes Ms. Fischer an inappropriate candidate for admission to practice before this Court. It also makes her a key witness in this case.

**FACTUAL BACKGROUND**

Gallagher's Complaint details a years-long pattern of activity by Alliant and its co-conspirators to tortiously interfere with competitors' contracts and business relations and engage in other unlawful conduct. The Complaint lists the cases about which Gallagher is aware in which Alliant has been sued for allegedly wrongful behavior.

Direct evidence of Alliant's unlawful conduct came to light in *Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104 (Del. Ch. June 20, 2019) ("*Lockton*"), where a privilege waiver allowed the court—and recently, due to unredacted records being unsealed, the public—to see the role played by certain counsel in Alliant's conduct. Among the most critical pieces of evidence obtained from the *Lockton* litigation are emails and other documents drafted by Ms. Fischer and sent to Alliant personnel.

In this case, Alliant denies it induced the resigning employees in Chicago to breach the 21-day notice requirements in their employment agreements. The question of whether Alliant directs new employees to leave their previous employer without notice, in derogation of these employees' contractual and fiduciary obligations, is squarely at issue. Ms. Fischer's emails confirm that Alliant's business strategy is to direct employees to leave without notice. More importantly for the purposes of this motion, Ms. Fischer, an officer of the Court, actively concealed evidence of Alliant's plan. Specifically, Ms. Fischer told Alliant executive Reshma Dalia:

> [W]e are no longer instructing employees in writing to resign without notice because they may have notice provisions – Alliant will instead instruct them verbally….

Exhibit A. The only purpose served by not putting these instructions in writing was to avoid creating a written record of Alliant's instructions to the employees. The only purpose of not having a written record of those instructions is to be able to deny—falsely—that the instructions were ever given. The *Lockton* court, which had all of the necessary context, concluded that this conduct was

2

improper. *See Lockton*, 2019 WL 2536104, at *17-18. Just as there is no plausible innocent explanation for Ms. Fischer's instruction not to create a written record of their conduct—and none was forthcoming at the TRO hearing—there is no innocent explanation for the conduct. The emails confirm that Ms. Fischer instructs Alliant to time the notice-provision breaches so that Alliant's new hires can solicit as many clients as possible—conduct which Alliant knows directly violates the new hires' contractual obligations—before a court is able to intervene. In Ms. Fischer's words:

> Please confirm we are telling the new hires to resign on Monday morning (March 11) as opposed to Friday afternoon (March 8). *If the resignations happen Friday, Lockton will have all weekend to prepare litigation strategy before the new hires are able to bring in business.*

Exhibit B (emphasis in original). Notably, before Ms. Fischer instructed Alliant to induce violations of the Lockton employees' notice and non-solicit obligations, she conducted a thorough analysis of the Lockton employees' agreements and determined that the restrictive covenants were likely enforceable. *See* Exhibit C.[1]

The above conduct is extraordinary, but there is more. Ms. Fischer directed Alliant executives to participate in the destruction of evidence. After learning that evidence of Alliant's scheme was inadvertently sent to the Lockton email account of one of the resigning employees (rather than his personal email account), Ms. Fischer instructed Alliant executive Peter Arkley to tell him to "delete this and any other emails he has sent or received to/from Springer if on his Lockton email." Exhibit D. Ms. Fischer called this destruction of evidence "a start." *Id.* And she

---

[1] Ms. Fischer's conduct also includes taking legal positions unsupported by law. Her conclusion "that the restrictive covenants were likely governed by Missouri law, would be valid under Missouri law, and were even likely to be valid under Colorado law," did not stop Alliant, through its counsel, from asserting the opposite position before the court. *Lockton*, 2019 WL 2536104, at *10. After reviewing Ms. Fischer's memorandum, the court noted: "Alliant appears to have manufactured its position that the restrictive covenants are invalid under Colorado law solely for purposes of litigation." *Id.*

instructed Arkley that both he and the Lockton employee should communicate orally rather than in writing. *Id.* (instructing Arkley to "CALL McDaniel" and that "CHUCK SHOULD DEAL WITH THIS BY TELEPHONE, NOT BY EMAIL") (capitalization in original). Upon reviewing these emails, the *Lockton* court concluded: "It now seems possible that the crime/fraud exception to the attorney-client privilege would provide an independent basis for ordering production of at least some of the entries on Alliant's log." *Lockton*, 2019 WL 2536104, at *10 n.6.

The *Lockton* court noted numerous other issues with counsel's conduct. Indeed, the privilege waiver occurred in the first instance because "the serious problems with Alliant's [privilege] log suggested that Alliant had not made a good-faith effort when preparing its log but instead was attempting to invoke privilege expansively to hide problematic documents." *Id.* The court also found that the "lawyer-drafted" affidavits submitted to the court were false—they "made expansive, absolutist representations about the absence of any solicitation efforts, which discovery revealed to be inaccurate." *Id.* at *2

## LEGAL STANDARD

Local Rule 83.14 of the Northern District of Illinois provides: "A member in good standing of the bar of the highest court of any state or of any United States district court ***may***, upon motion, be permitted to argue or try a particular case in whole or in part" in this district. *See* L.R. 83.14 (emphasis added). "Admission pro hac vice is a privilege, not a right." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 954 (7th Cir. 2020) (citing *Leis v. Flynt*, 439 U.S. 438, 442 (1979)). A federal district court has inherent authority "to control admission to its bar and to discipline attorneys who appear before it." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Accordingly, the decision to grant or deny a *pro hac vice* application is within this Court's discretion. *See United States v. Ensign*, 491 F.3d 1109, 1113 (9th Cir. 2007).

4

While the Seventh Circuit has not articulated a specific set of grounds for denying *pro hac vice* motions, its sister circuits and other federal courts provide guidance. The Fourth Circuit has held that a district court may deny a *pro hac vice* application based on the attorney's "unlawyerlike conduct." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (per curiam). The Sixth Circuit has held that a court may deny *pro hac vice* status where "some evidence of ethical violations was present." *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 34 (6th Cir. 1984). Similarly, the Ninth Circuit has affirmed a denial of *pro hac vice* admission where the district court had reasonable concerns regarding an attorney's "ethical fitness." *Ensign*, 491 F.3d at 1115. And the Third Circuit has stated that denial of *pro hac vice* admission is appropriate where the court finds the applicant "is not presently of good moral or professional character." *In re Dreier*, 258 F.2d 68, 70 (3d Cir. 1958).[2]

The Court's assessment of the attorney's conduct and character need not be limited to the case at bar, and instead may rely on past conduct. *Kohlmayer v. Nat'l R.R. Passenger Corp.*, 124 F. Supp. 2d 877, 883 (D.N.J. 2000) (denying *pro hac vice* application where the court was "made aware of a pattern of uncivilized behavior by an attorney, bordering on the unethical, which has resulted in the waste of judicial time in the past"). The court may consider conduct it deems relevant "regardless of whether formal ethical complaints have been made."[3] *Id.*

---

[2] The Eleventh and Fifth Circuits have adopted a more stringent standard, holding that denial of a *pro hac vice* motion is appropriate only where the attorney's conduct rises to a level sufficient to warrant disbarment. *See Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561-62 (11th Cir. 1997); *In re Evans*, 524 F.2d 1004, 1007–08 (5th Cir. 1975). The Eighth Circuit, however, has declined to adopt that high bar. *See U.S. v. Gonzalez-Lopez*, 399 F.3d 924, 930 n.4 (8th Cir. 2005).

[3] It is worth noting that, as set forth in Gallagher's Complaint and briefing on its TRO motion (Dkt. 9), the over-designation of non-privileged documents and the submission of lawyer-drafted affidavits that are later proven false are both practices that Alliant and its counsel continue to this day.

**ARGUMENT**

Ms. Fischer's *pro hac vice* application should be denied. The documents unsealed in the *Lockton* litigation evidence conduct that shocks the conscience and clearly violates the ethical standards of this Court, which are principally set forth in the Model Rules of Professional Conduct adopted by the American Bar Association ("Model Rules"). *See* L.R. 83.50.

By instructing Alliant to induce contractual breaches and to do so verbally rather than in writing so as to conceal the unlawful conduct, Ms. Fischer committed numerous ethical violations. Counseling a client about how to conceal tortious conduct violates various provisions of Model Rule 8.4, including at least 8.4(a) (violating the Rules of Professional Conduct); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice). As the *Lockton* court recognized in stating that it was "possible that the crime/fraud exception to the attorney-client privilege would" apply to Ms. Fischer's communications, *see Lockton*, 2019 WL 2536104, at *10 n.6, Ms. Fischer's conduct also likely violates Model Rule 1.2(d) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent….").

Ms. Fischer's directive to destroy evidence also violates a host of ethical rules. In addition to Model Rules 8.4 and 1.2 noted above, Model Rule 3.4(a) explicitly provides that a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

Likewise, the use of overly broad privilege logs to hide problematic documents, the submission of false affidavits to a court, and the assertion of legal arguments the lawyer does not believe to be supported by the law, all implicate numerous ethical rules, including but not limited

6

to Model Rule 3.3 (requiring candor to the court) and Model Rule 3.4 (requiring fairness to the opposing party and counsel).

The conduct in question does not depend upon the veracity of witnesses or any inference. The conduct is in black and white for the Court to see. It is revealing that Alliant did not attempt to provide any innocent explanation for that conduct in its lengthy written response or its oral argument to the Court. Given the writings, that is unsurprising.

Finally, Ms. Fischer is a necessary witness in this case. Gallagher already has evidence consistent with the conduct displayed in *Lockton*. There was uniform violation of the 21-day notice requirement—something Ms. Fischer directed be done in *Lockton*. There were simultaneous, obviously orchestrated resignations of multiple Gallagher employees—something Ms. Fischer directed be done in *Lockton*. Gallagher is entitled to know the role Ms. Fischer played in those actions here. If Ms. Fischer's admonitions not to put anything in writing were followed here, Gallagher will need to take testimony about the genesis of the unlawful acts alleged, including from Ms. Fischer. Accordingly, she is expected to testify both in deposition and at trial. At minimum, this bars Ms. Fischer's participation in trial. *See* Model Rule 3.7(a) ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness….").

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Gallagher respectfully requests that the Court enter an Order denying Debra L. Fischer's Motion for Leave to Appear *Pro Hac Vice*.

DATED: August 12, 2022　　　　　Respectfully submitted,

*/s/ Ronald S. Safer*
Ronald S. Safer, ARDC # 6186143
Eli J. Litoff, ARDC # 6317940
Matthew A. Blumenreich, ARDC # 6329458
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Phone: 312-471-8700
Fax: 312-471-8701
Email: rsafer@rshc-law.com
　　　　elitoff@rshc-law.com
　　　　mblumenreich@rshc-law.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 12, 2022, I filed a copy of the foregoing document using the Court's CM/ECF filing system, which will automatically send notice of the filing to all counsel of record.

                 */s/ Eli J. Litoff*